1
2
3
4
5
6
7
8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

11   VICTOR GUDINO,                          )   Case No.: 1:10-cv-01310-AWI-JLT
                                             )
12                  Petitioner,              )   FINDINGS AND RECOMMENDATIONS TO
                                             )   DENY PETITION FOR WRIT OF HABEAS
13           v.                              )   CORPUS (Doc. 1)
                                             )
14   K. ALLISON, Warden,                     )   ORDER DIRECTING THAT OBJECTIONS BE
                                             )   FILED WITHIN TWENTY DAYS
15                  Respondent.              )
                                             )
16   _____

17           Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                           **PROCEDURAL HISTORY**

20           Petitioner is in custody of the California Department of Corrections and Rehabilitation

21   ("CDCR") serving an indeterminate sentence of 25 years-to-life pursuant to a judgment of the

22   Superior Court of California, County of Kings (the "Superior Court").  On December 19, 2007,

23   Petitioner was convicted by jury trial of possessing a sharp instrument while confined in a penal

24   institution.  (Cal. Pen. Code § 4502(a)). (Clerk's Transcript on Appeal ("CT"), p. 194). The jury also

25   found that Petitioner had suffered two prior "serious" or "violent" felonies that qualified as strikes

26   under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)).  (CT 194).]  Petitioner was

27   sentenced to an indeterminate term of 25 years-to-life, to be served consecutive to the term he was

28   already serving for an unrelated conviction.  (Doc. 11, Lodged Documents ("LD") 4, p. 2).

                                             1

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA").  On September 26, 2008, the 5th DCA, in an unpublished decision, affirmed Petitioner's conviction.  (LD 4).  On December 10, 2008, the state Supreme Court denied Petitioner's petition for review.  (LD 5, 6).

On September 23, 2009, Petitioner filed a state habeas corpus petition in the Kings County Superior Court, which was denied on November 24, 2009.  (LD 7, 8).  On March 5, 2010, Petitioner filed a state habeas petition in the 5th DCA, which denied the petition on March 18, 2010.  (LD 9, 10).  On April 1, 2010, Petitioner filed a Petition for Review in the California Supreme Court, which was denied on June 17, 2010.  (LD 11, 12).

On July 22, 2010, Petitioner filed the instant petition, raising eight grounds for relief.  (Doc. 1).  Respondent filed an answer on October 6, 2010.   (Doc. 10).  On November 8, 2010, Petitioner filed his Traverse.  (Doc. 14).  Respondent concedes that the all grounds for relief in the petition have been fully exhausted.  (Doc. 10, p. 3).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

At 5:50 a.m. on September 15, 2006, correctional officer Enrique Chavez of Corcoran State Prison was in his office when he heard a door banging and someone calling for an officer. Chavez could tell the noise came from B section and followed the sound to cell 34. Through a small side window, Chavez saw Jaime Cuevas and Gudino standing next to their bunks. Cuevas was distressed, breathing heavily and seemed frightened.

Cuevas told Chavez there was a misunderstanding and everything was fine. Gudino appeared calm. Chavez did not notice any injuries. Cuevas told Chavez that he needed to come out of the cell. As Chavez went downstairs to retrieve a key from the key booth operator, he heard a commotion and banging like two inmates fighting and ran back to the cell.

When Chavez looked back into the same cell, the lights were off and he could not see anything. Chavez pulled out a flashlight and saw Cuevas and Gudino facing each other throwing punches to their faces, upper torsos, and chests. Chavez ordered them to stop fighting before spraying both inmates with pepper spray.

Chavez did not initially see any weapons. After Gudino turned on the lights, Chavez could see that Cuevas had red marks on his face and chest and a laceration on his chest down to his stomach. Cuevas had a lot of blood on his chest and shoulder. Gudino and Cuevas were then placed in handcuffs. The laceration on Cuevas's chest was between 20 and 24 inches long. Cuevas was taken to a prison hospital.

Cuevas had convictions for assault, carjacking, and second degree robbery. Gudino was Cuevas's cellmate at Corcoran. The morning of the attack, Cuevas was awakened by a bad burning pain in his back. When Cuevas awoke, he saw Gudino who started swinging at Cuevas. Gudino was holding a sock full of soap and a blade. The blade was the kind used for shaving and Cuevas remembered it had a handle.

Cuevas began calling and screaming for help. Cuevas was bleeding from his stomach. Cuevas told the correctional officer that he had to get out of the cell. The correctional officer left for a few minutes before returning. Cuevas argued with Gudino, who rushed Cuevas attempting to cut him up more. Cuevas was trying to get away from Gudino who still had the blade. The correctional officer pepper sprayed Cuevas and Gudino when he returned. Cuevas had seen the blade before under his own mattress but denied that it belonged to him. Cuevas acknowledged he did not initially tell authorities that he saw a blade because he was scared.

In September 2006, Cuevas was taking medication for psychological problems. Cuevas was going to the psychiatric facility in Corcoran after the incident. Cuevas said he had never been found incompetent to stand trial. Cuevas wanted to change cells because Gudino would boss him around and made Cuevas feel disrespected. Gudino would whisper into Cuevas's ear. Before the incident, Cuevas had a feeling something was going to happen.

Cuevas was cut on his shoulders, back, stomach, and chest. Cuevas received 10 to 20 stitches on his back and about 20 stitches on his stomach. Cuevas saw Gudino flush the blade down the toilet.

Matthew H. Bejarano, Jr., is a correctional officer with the prison's Investigative Services Unit and is responsible for investigating crimes within the prison. Bejarano watched Cuevas being removed by gurney after the attack. Bejarano took photographs of Gudino and then of the cell area. The photographs depicted blood stains on the wall, showing a possible struggle. There were blood stains on a shirt, above Gudino's bunk, on Cuevas's bed sheets, and at the foot of Cuevas's bed.

Robert Adame, another investigating officer, collected a white sock containing a bar of soap from the cell. Medical Technical Assistant Rolando Pobleto, LVN, examined Cuevas's injuries. Cuevas was bleeding profusely so Pobleto called an ambulance. Pobleto believed the injuries were caused by a sharp object. Pobleto also examined Gudino that day. Gudino had superficial scratches and a cut lip.

David Ruiz, a correctional lieutenant, inspected Gudino's hands and saw cut marks on the inside of his hands consistent with having a blade used to slash or stab. Because inmate weapons do not have stops, when they are used the inmate's hand will slip up the blade and the inmate will cut himself. When Ruiz observed Cuevas's injuries, it was clear, given the length of the wound, that Cuevas had suffered deliberate slashing. There were multiple slashes made over and over again in one area. Ruiz described the attack as "real violent."

Gudino had packaged up his personal property in preparation for a cell search. A bloody sheet had been folded. Based on his observations of the cell and the inmates, Ruiz identified Gudino

3

as the suspect and Cuevas as the victim. Gudino could have suffered injuries to his hands if he was holding a weapon to defend himself or to be aggressive.

Ruiz believed Gudino initially attacked Cuevas by slashing his back. Ruiz explained that there was a sock found in the cell that was tied up in a knot and state-issued soap caked up together. Soap placed in the sock can be used as a sling with which an inmate can hit others. Ruiz testified that soap in the sock could be used as a weapon, a sling or a slingshot. The slungshot is usually made with hardened pieces of soap inside a sock. This type of weapon causes serious bruising and injury.  Gudino did not have any bruising on his body. The jury was shown photographs taken of Gudino after the fight. Ruiz explained that an injury on Gudino's cheek was likely made by a fist.

The day before the fight, Gudino told Correctional Officer Baer that he had no problems with his cellmate. Baer talked to Cuevas who said he had no safety concerns. The two convinced Baer there were no problems, though Cuevas preferred to be moved into a section with some "homies."

Gudino testified that he shared a cell with Cuevas for 10 or 11 days prior to the fight. The two agreed to be cellmates. Gudino, however, described Cuevas as "fucked up." Casual conversation upset Cuevas. Cuevas accused Gudino of whispering into his ear. Gudino asked Cuevas what was wrong with him. Gudino asked Cuevas if he needed medication and told him to take his medication because Cuevas was under the impression he could not take it.

On the morning of September 15, 2006, Gudino woke up, washed up, and put his things away. Gudino told Cuevas to go ahead, meaning he could use the facilities. Gudino said that Cuevas jumped out of bed and attacked him, hitting him several times using the sock later found on the cell floor. The two men exchanged blows. Cuevas threw Gudino's television at Gudino. It was then that the correctional officer came to the cell door.

Gudino was trying to wash his face after the correctional officer initially left. Cuevas was digging in his bed. The two struggled, ending up by the door. Gudino grabbed Cuevas and then saw a small blade in Cuevas's hand. Cuevas dropped the blade and Gudino picked it up. Cuevas quickly grabbed Gudino. Cuevas still had a hold on Gudino. Gudino reached up and cut Cuevas who was still fighting. As soon as he was free of Cuevas, Gudino threw the blade down. The two men continued to fight until the officer returned and pepper sprayed them.

During cross-examination, Gudino said he picked up the blade because he was in fear of his life. Gudino further admitted he cut Cuevas with the blade. Gudino asserted that he just threw the blade to the ground. Gudino denied flushing the blade down the toilet.

(LD 4, pp. 2-6).

///

///

///

4

# DISCUSSION

I.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

   (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000).

1    A state court decision involves an "unreasonable application" of clearly established federal law "if the

2    state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable

3    manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25

4    (2002)(per curiam).

5         Consequently, a federal court may not grant habeas relief simply because the state court's

6    decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

7    Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In

8    Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an

9    "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

10   fairminded jurists could disagree" that the state court decision meets the standards set forth in the

11   AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.

12   As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

13   unreasonable application of, clearly established Federal law" is "difficult to meet," because the

14   purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme

15   malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter,

16   131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens,

17   J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable*

18   application of federal law is different from an *incorrect* application of federal law.'"  Cullen v.

19   Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus

20   from a federal court "must show that the state court's ruling on the claim being presented in federal

21   court was so lacking in justification that there was an error well understood and comprehended in

22   existing law beyond any possibility of fairminded disagreement."  Richter, 131 S.Ct. at 787-788.

23        Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

24   court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1398 ("This backward-looking

25   language requires an examination of the state-court decision at the time it was made.  It follows that

26   the record under review is limited to the record in existence at the same time–i.e., the record before the

27   state court.")

28        The second prong of federal habeas review involves the "unreasonable determination" clause

6

of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520;  Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings.   "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of

1   the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v.

2   Morgan, 313 F.3d at 1167.

3          The prejudicial impact of any constitutional error is assessed by asking whether the error had

4   "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

5   Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

6   that the Brecht standard applies whether or not the state court recognized the error and reviewed it for

7   harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate

8   prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

9   648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective

10  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice

11  standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila

12  v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir.

13  2009).

14         **III.  Review of Petitioner's Claims.**

15         The instant petition itself alleges the following as grounds for relief: (1) the trial court violated

16  Petitioner's due process rights by mis-instructing the jury that the prosecution did not have to prove

17  that Petitioner used or intended to use the "slungshot" or the blade as a weapon; (2) insufficient

18  evidence to support the verdict; (3) the trial court erred in failing to instruct the jury that self-defense is

19  a defense to the unlawful possession of a weapon; (4) prosecutorial misconduct in presenting false

20  evidence; (5) prosecutorial conduct in concealing evidence; (6) ineffective assistance of trial counsel;

21  (7) prosecutorial evidence in suppressing material evidence; (8) ineffective assistance of appellate

22  counsel; and (9) cumulative error.[1]

23         A.  Instructional Error (Ground One)

24         Petitioner first argues that the trial court erred in instructing the jury that "the People do not

25  have to prove that the defendant used or intended to use the objects as a weapon."  (Doc. 1 at 17).

26

27  [1] Grounds Two and Three were presented to the 5th DCA and, subsequently, to the California Supreme Court, on direct
     review of the conviction.  The last reasoned decision as to these two claims was in the 5th DCA's unpublished opinion.
     Grounds One and Four through Nine were presented in state collateral proceedings; the state appellate courts summarily
28  denied the petitions.  Hence, the last reasoned decision on those claims was the Kings County Superior Court's denial of
     Petitioner's habeas petition.

Respondent contends that this claim is procedurally barred, that it fails to state a cognizable federal habeas claim, and that, on the merits, it fails.  The Court agrees with Respondent on all points.

The issue, first raised in the Superior Court in a state habeas petition, was rejected by that court for failure to raise the issue in his direct appeal, citing In re Clark, 5 Cal. 4th 750, 765.  (LD 8).  In Clark, the California Supreme Court cited the well-established rule that "in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction."  Clark, 5 Cal.4th at 765.

A state court's refusal to hear the merits of a claim because of  Petitioner's failure to follow a state procedural rule is considered a denial of relief on an independent and adequate state ground. See Harris v. Reed, 489 U.S. 255, 260–61, 109 S.Ct. 1038 (1989). The state rule for these purposes is only "adequate" if it is "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 424, 111 S.Ct. 850 (1991); see also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied."). The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir.2000) (citing Michigan v. Long, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469 (1983)). Furthermore, procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263. This means that the state court must have specifically stated that it was denying relief on a procedural ground. See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Acosta–Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir.1993).

Nevertheless, even if the state rule is independent and adequate, the claim may be reviewed by the federal court if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

The procedural bar referred to above in Clark has been determined to be independent of California law since 1998, the date the California Supreme Court announced In re Robbins, 18 Cal.4th 770 (1998).  See Bennett, 322 F.3d at 583.  Additionally, the bar referred to in Clark has also been

1    held to be well-established and consistently applied since at least 2003.  Id.  Petitioner's state habeas

2    petition was filed on September 23, 2009, long after the bar was deemed independent and adequate.

3    Moreover, Petitioner, in his Traverse, did not allege specific facts that would demonstrate the

4    inadequacy of lack of independence of this procedural bar.  Nor has Petitioner offered any "cause and

5    prejudice" exception to the bar.[2]  Hence, the bar may be applied.  Id.

6         However, even if the claim were not procedurally barred, it fails to state a cognizable federal

7    habeas claim since it sounds only in state law and implicates no federal constitutional concerns.  The

8    basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the

9    United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody

10   in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall entertain a

11   petition for writ of habeas corpus only on the ground that the petitioner "is in custody in violation of

12   the Constitution or laws or treaties of the United States. See also, Rule 1 to the Rules Governing

13   Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence

14   of habeas corpus is an attack by a person in custody upon the legality of that custody . . ."  Preiser v.

15   Rodriguez, 411 U.S. 475, 484 (1973). Furthermore, in order to succeed in a petition pursuant to 28

16   U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court resulted in

17   a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

18   law, as determined by the Supreme Court of the United States; or resulted in a decision that was based

19   on an unreasonable determination of the facts in light of the evidence presented in the State court

20   proceeding. 28 U.S.C. § 2254(d)(1), (2).

21        Petitioner does not allege a violation of the Constitution or federal law, nor does he argue that

22   he is in custody in violation of the Constitution or federal law.  Petitioner does not allege that the

23   adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an

24   unreasonable application of, clearly established Federal law . . . or resulted in a decision that was

25   based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254.  Petitioner has presented

26   his claim exclusively as a violation of California law, and, generally, issues of state law are not

27

28   [2] To the contrary, Petitioner's Traverse contains no substantive arguments at all.  Rather, he merely "incorporates by reference" the arguments raised in his petition.  (Doc. 14, p. 2).

10

1  cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67 (1991)("We have stated

2  many times that 'federal habeas corpus relief does not lie for errors of state law.'"), quoting Lewis v.

3  Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J.,

4  concurring)("mere error of state law, one that does not rise to the level of a constitutional violation,

5  may not be corrected on federal habeas").   Indeed, federal courts are bound by state court rulings on

6  questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S.

7  942 (1989).  The mere "availability of a claim under state law does not of itself establish that a claim

8  was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990),

9  quoting, Dugger v. Adams, 489 U.S. 401, 409 (1989). Tinsley v. Borg, 895 F.2d 520, 530 (9th

10  Cir.1990), cert. denied, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for

11  federal habeas relief). The issue of whether a jury instruction is a violation of state law is neither a

12  federal question nor a proper subject for habeas corpus relief.  Estelle v. McGuire, 502 U.S. at 68;

13  Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law,

14  one that does not rise to the level of a constitutional violation, may not be corrected on federal

15  habeas").

16      However, even assuming, arguendo, that the claim was not procedurally barred and that it did

17  state a cognizable federal habeas claim, it would still fail on its merits.  Cal. Pen. Code § 4502(a), the

18  governing statute for Petitioner's conviction, provides as follows:

19  (a) Every person who, while at or confined in any penal institution, while being conveyed to or
from any penal institution, or while under the custody of officials, officers, or employees of
20  any penal institution, possesses or carries upon his or her person or has under his or her
custody or control any instrument or weapon of the kind commonly known as a blackjack,
21  slugshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed
ammunition, any dirk or dagger or sharp instrument, any pistol, revolver, or other firearm, or
22  any tear gas or tear gas weapon, is guilty of a felony and shall be punished by imprisonment
pursuant to subdivision (h) of Section 1170 for two, three, or four years, to be served
23  consecutively.

24  (Emphasis supplied).

25      The instruction given to the jury, CALCRIM no. 2475, included the above-mentioned elements

26  and also contained an admonition that "[t]he People do not have to prove that the defendant used or

27  intended to use the object as a weapon."  (CT 147).  Contrary to Petitioner's contention, this is a

28  correct statement of California law.

11

Under § 4502(a), the question whether the inmate knew that possession of a prohibited object was unlawful is irrelevant and the trial court is not required to instruct that the inmate had to know that the device was prohibited under the statute.  Cf. People v. Reynolds, 205 Cal.App. 3d 776, 779 (1988); see People v. Gory, 28 Cal.2d 450, 455-456 (1946).  If the prosecution need not prove that Petitioner knew the device was prohibited under the statute, i.e., that mere possession of a prohibited item was a criminal offense, then it follows that proof of the inmate's intent in possessing that contraband item is likewise not required.  Since the jury was properly instructed on the elements of the offense, and since the additional language in the instruction was in conformity with California case law, Petitioner's claim that the disputed phrase in the instruction was erroneous has no merit.

B.   Insufficiency of the Evidence (Ground Two)

Petitioner next contends that the evidence was insufficient to support the verdict.  The Court disagrees.

1.   The 5th DCA's Opinion.

Gudino contends that there was insufficient evidence that he possessed a slungshot. Gudino argues that a piece of soap in a sock is not a slungshot, does not meet the definition of a slungshot, and could not inflict serious injury on another person. Gudino was charged in count two with possession of a slungshot or a sharp instrument and argues that because the jury could have convicted him of possession of a slungshot, his conviction must be reversed for insufficient evidence.

In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence-evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same as in cases in which the prosecution relies mainly on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (People v. Rodriguez (1999) 20 Cal.4th 1, 11; also see People v. Johnson (1980) 26 Cal.3d 557, 578; Jackson v. Virginia (1979) 443 U.S. 307, 317-320.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment. We presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (People v. Guerra (2006) 37 Cal.4th 1067, 1129; People v. Kraft (2000) 23 Cal.4th 978, 1053.)

Section 4502, subdivision (a) proscribes inmates from the possession or carrying of a series of weapons including a slungshot or a sharp instrument.  A slungshot has been defined as a small mass of metal or stone fixed on a flexible handle or strap that is used as a weapon. (People v. Fannin (2001) 91 Cal.App.4th 1399, 1401-1402 (Fannin ); People v. Williams (1929) 100 Cal.App. 149, 151.) The Fannin court summarized a slungshot as "a striking weapon consisting

12

of a heavy weight attached to a flexible handle." (<u>Fannin, supra</u>, 91 Cal.App.4th at p. 1406.) <u>Fannin</u> held that the prosecution bears the burden of proving the defendant possessed such an object as a weapon. (<u>Ibid.</u>)

The slungshot found in Gudino's cell was made with a sock, knotted on one end, and filled with caked or hardened soap. Officer Ruiz testified that this instrument can cause serious injury and bruising. Cuevas, the victim, testified that Gudino was holding the sharpened instrument and the slungshot.

We find that the weapon described by Cuevas and Officer Ruiz comes within the common definition of a slungshot, even if the sock was not filled with a mass of metal or stone. The handle, the sock itself, was flexible. The hardened pieces of soap may not have been as hard as metal, but could have been nearly as hard as stone. The jury was entitled to determine, based on the photographs it viewed as well as the testimony of correctional officers, that hardened soap could cause serious injury or bruising to the victim when deployed inside the sock. The prosecution submitted sufficient evidence that Gudino possessed a slungshot.

Gudino analogizes his case to <u>People v. Mayberry</u> (2008) 160 Cal.App.4th 165 (<u>Mayberry</u>). In Mayberry, the defendant was convicted of possession of a sandclub or sandbag in violation of section 12020, subdivision (a)(1).6 The defendant had modified a workout glove with sand and used it in an assault. (<u>Mayberry, supra</u>, 160 Cal.App.4th at p. 167.) The <u>Mayberry</u> court found that a workout glove did not meet the definition of a sandclub or sandbag. The <u>Mayberry</u> court further found that the means in which the glove was used could not transform the glove into a sandclub or sandbag. (<u>Id.</u> at pp. 169-171.)  Because the knotted sock and dried soap employed by Gudino meets the statutory definition of a slungshot, we find the facts of <u>Mayberry</u> inapposite to those in the instant action.

(LD 4, pp. 6-9).

        2.  <u>Analysis</u>.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court.  Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Jackson</u>, 443 U.S. at 319; <u>see also Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  <u>Jackson</u>, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law.  <u>Id</u>. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  <u>Payne v. Borg</u>, 982 F.2d 335,

338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'"  See id., quoting Jackson, 443 U.S. at 319.  Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations.  See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion and speculation cannot support logical inferences.  Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case.  Id. at 1275.[1]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court

---

[1]Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

1   determinations of legal questions or mixed questions of law and fact, the facts as found by the state

2   court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539,

3   597, 102 S.Ct. 1198 (1981).

4           Recently, in Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme

5   Court further explained the highly deferential standard of review in habeas proceedings, by noting that

6   Jackson

7           "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions
            should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's
8           verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed
            with the jury. What is more, a federal court may not overturn a state court decision rejecting a
9           sufficiency of the evidence challenge simply because the federal court disagrees with the state
            court. The federal court instead may do so only if the state court decision was "objectively
10          unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678
            (2010) (internal quotation marks omitted).
11
            Because rational people can sometimes disagree, the inevitable consequence of this settled law
12          is that judges will sometimes encounter convictions that they believe to be mistaken, but that
            they must nonetheless uphold.
13

14  Cavazos, 132 S.Ct. at 3.

15
            "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the
16          evidence in the light most favorable to the prosecution, any rational trier of fact could have
            found the essential elements of the crime beyond a reasonable doubt.'  443 U.S., at 319, 99
17          S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of
            historical facts that supports conflicting inferences must presume—even if it does not
18          affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of
            the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.
19

20  Cavazos, 132 S.Ct. at 6.

21          Here, the 5th DCA applied the correct federal constitutional standard, as expressed in Jackson.

22  Thus, the only issue is whether the state court's adjudication was contrary to or an unreasonable

23  application of that standard.  The Court concludes that it was not.

24          As the 5th DCA noted, the evidence was uncontroverted that, at various times, Petitioner was in

25  possession of both a sharpened instrument and the sock filled with hardened soap, i.e., the "slungshot."

26  The appellate court carefully explained why the latter met the statutory definition, as construed in

27  California case law.  Petitioner contends that a bar of soap inside a sock does not meet the statutory

28  definition of a slungshot, since it can inflict, at worst, a bruise.  (Doc. 1, p. 22).  However, the 5th

1  DCA's opinion explained why the device met the statutory definition, i.e., that the soap could be

2  almost as hard as stone, thus inflicting severe damage.  The state court's factual findings are presumed

3  correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated

4  on the merits in a state court and based on a factual determination will not be overturned on factual

5  grounds unless objectively unreasonable in light of the evidence presented in the state court

6  proceedings, § 2254(d)(2)."  The state court's finding that the soap and sock combination met the

7  statutory definition for a slungshot is not objectively unreasonable.  Moreover, this Court is bound by

8  a state court's interpretation of state law.  Oxborrow, 877 F.2d at 1399.  As for the sharp object, no

9  one disputes the conclusion that the sharpened instrument possessed and used by Petitioner met the

10  statutory definition of a sharp object proscribed by § 4502(a).  As mentioned, proof of intent for the

11  two weapons is unnecessary.  Accordingly, sufficient evidence was presented to support a conviction

12  on that charge.

13       Moreover, as is obvious from the preceding analysis, this is entirely a state law issue involving

14  the statutory interpretation of contraband listed in a state statute.  There is no federal constitutional

15  principle involved here.  Therefore, the claim fails to raise a cognizable federal constitutional issue.

16  Estelle, 502 U.S. at 68.

17       **C.**  Self-Defense Instruction (Ground Three)

18       Petitioner next contends that the state court erred in giving a self-defense instruction that

19  referred only to the sharp instrument, and not to Petitioner's possession of the slungshot.  This

20  contention is also without merit.

21       1.  The 5th DCA's Opinion.

22  The 5th DCA rejected this argument as follows:

23  Gudino contends the trial court failed to give a proper self-defense instruction because the jury
   was only instructed that Gudino was not guilty of count two, possession of a sharp instrument,
24  if Gudino used force against another person in self-defense. Gudino argues that the instruction
   did not include possession of a slungshot and, therefore, he did not receive a complete
25  instruction on self-defense.

26  A trial court has a sua sponte duty to instruct regarding a defense if there is substantial
   evidence to support it and the defense is consistent with the defendant's theory of the case.
27  (People v. Montoya (1994) 7 Cal.4th 1027, 1047.) A narrow claim of self-defense can be used
   by an inmate charged with a violation of section 4502 as long as the arming occurs during an
28  altercation and the inmate has not armed himself or herself in anticipation of a future attack.
   (People v. Saavedra (2007) 156 Cal.App.4th 561, 571 (Saavedra ).)

16

Gudino's theory of self-defense was not predicated on use of the slungshot. Gudino testified, and we acknowledge his testimony constituted substantial evidence of self-defense, that the victim grabbed a blade from his bed and attacked Gudino with it. During a struggle, according to Gudino, Cuevas dropped the blade and Gudino grabbed it from the floor and used it in self-defense to stop Cuevas who was still attacking him. Gudino never admitted using the slungshot in self-defense.

Cuevas's testimony was that Gudino started attacking him with the slungshot and/or the blade while he was sleeping and that Cuevas only fought back in self-defense. Cuevas did not state that he used either weapon in the fight but did explain that he was fighting defensively. There was no evidence from either witness that Gudino used the slungshot in self-defense. The only instrument Gudino admitted using in self-defense was the sharp instrument. The trial court was not obligated to instruct the jury on a theory for which there was no evidentiary support, i.e., that Gudino was defending himself with a slungshot.

(LD 4, pp. 9-10).

2.   Analysis.

In determining whether instructional error warrants habeas relief, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v. Abrahamson, 507 U.S. at 637--whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Henderson v. Kibbe, 431 U.S. at 154. Moreover, an individual such as Petitioner in this case whose claim involves the omission of an instruction "bears an especially heavy burden," because an omission is less likely to be prejudicial than a purported misstatement of the law. Id. at 155.

As the 5th DCA correctly noted, Petitioner's self-defense theory was predicated entirely on his possession and use of the sharp instrument, not the slungshot. Indeed, the state of the evidence at trial

1   was such that no one, not even Petitioner, testified that he had actually used the slungshot in self-

2   defense; rather, the evidence indicated that Petitioner used the slungshot only in his assault on the

3   victim.  Failure to instruct on the defense theory of the case is reversible error if the theory is legally

4   sound and evidence in the case makes it applicable.  <u>Beardslee v. Woodford</u>, 358 F.3d 560, 577 (9th

5   Cir. 2003), citing <u>United States v. Scott</u>, 789 F.2d 795 (9th Cir.1986).  Petitioner does not cite, and the

6   Court is unaware, of any federal authority requiring a state court to instruct the jury on a defense

7   theory that is not supported by any of the evidence.  Petitioner argues that the 5th DCA's reading of the

8   evidence to mean that his self-defense theory was not predicated on the use of the slungshot is ""too

9   narrow a reading of the facts of the case."  (Doc. 1, p. 27).  However, Petitioner does not explain how

10  the evidence at trial would have supported a different or more expansive reading of the facts

11  presented.  Accordingly, the state court adjudication was not objectively unreasonable.

12          D.  <u>Prosecutorial Misconduct (Grounds Four and Five).</u>

13          Petitioner next contends that his conviction was based upon manufactured evidence, i.e., the

14  slungshot made of a bar of soap and a sock (ground four), and that the prosecution failed to disclose

15  this evidence during pre-trial discovery, thus depriving Petitioner of his due process rights (ground

16  five).  Both contentions are without merit.

17          The Superior Court rejected Petitioner's claim as follows:

18          In regards to Petitioner's "new" evidence and disclosure claims, the petition fails to state a
        prima facie claim of relief.  Petitioner contends that correctional employees falsely
19      manufactured evidence of a slungshot and therefore it was the prosecution's duty to correct
        testimony known to be false.  However, Petitioner has failed to specifically plead facts which
20      indicate knowledge on the part of the prosecution of the allegedly fraudulent evidence.  In
        addition, a violation of California Penal Code Section 4502 can also be found to exist based
21      upon an inmate's possession of a "dirk or dagger or sharp instrument."  From the unpublished
        decision of the California Court of Appeal, Fifth Appellate District in this case, it appears that
22      it is impossible to tell from the verdict form whether the jury convicted Petitioner based upon
        his possession of the slungshot or a sharp instrument.  (Citation omitted).  According to the
23      Court of Appeal, "[t]here was substantial evidence that Gudino possessed a sharp instrument
        given the lacerations on the victim's body and the cuts on Gudino's hand.  There is also
24      evidence from Cuevas's testimony that Gudino attached the sharp instrument to the slungshot."
        (Citations omitted).  Accordingly, either a slungshot or a sharp instrument being sufficient to
25      support Petitioner's conviction, trial counsel's failure to object to late and/or non-disclosure of
        evidence concerning the slungshot would appear to have little prejudicial effect upon the
26      ultimate finding of guilty reached in this case.

27  (LD 8, pp. 2-3).

28          This conclusion was neither contrary to nor an unreasonable application of clearly established

18

federal law. The U.S. Supreme Court has long held that a criminal conviction may violate a defendant's federal due process rights if it is obtained through testimony or evidence that the prosecutor knows to be false, or later discovers to be false and allows to go uncorrected. See Napue v. People of the State of Illinois, 360 U.S. 264, 269–70, 79 S.Ct. 1173 (1959). Accord Alcorta v. Texas, 355 U.S. 28, 31, 78 S.Ct. 103 (1957); Pyle v. Kansas, 317 U.S. 213, 215–16, 63 S.Ct. 177 (1942); Mooney v. Holohan, 294 U.S. 103, 112–13, 55 S.Ct. 340 (1935); Jackson v. Brown, 513 F.3d 1057, 1071 (9th Cir.2008) ("The Supreme Court has long held that a conviction obtained using knowingly perjured testimony violates due process."). A due process violation can result from the prosecution's presentation of false evidence or testimony during preliminary proceedings, as well as during a criminal trial. See Hayes v. Brown, 399 F.3d 972, 979–80 (9th Cir.2005) (holding that the prosecution violated a defendant's due process rights by knowingly making false representations to the trial judge during the defendant's preliminary examination, in addition to presenting false evidence to the jury during the subsequent trial).

Furthermore, Napue prohibits subornation of perjury. See Hayes, 399 F.3d at 980–81 (rejecting the State's claim that "it is constitutionally permissible for [the State to] knowingly present false evidence ... as long as the witness used to transmit the false information is kept unaware of the truth" and therefore "did not commit perjury."). However, also "Napue, by its terms, addresses the presentation of false evidence, not just subornation of perjury." Id. at 981 (citing Napue, 360 U.S. at 269). "There is nothing in Napue, its predecessors, or its progeny, to suggest that the Constitution protects defendants only against the knowing use of perjured testimony. Due process protects defendants against the knowing use of any false evidence by the State, whether it be by document, testimony, or any other form of admissible evidence." Id. (citing Phillips v. Woodford, 267 F.3d 966, 984–85 (9th Cir.2001)).

Mere inconsistencies in the evidence, however, do not constitute the knowing use of false testimony by the prosecution, and it is "within the province of the jury to resolve the disputed testimony." See United States v. Geston, 299 F.3d 1130, 1135 (9th Cir.2002). Thus, prosecutors will not be held accountable for discrepancies in testimony or evidence where there is no evidence from which to infer prosecutorial misconduct. See United States v. Zuno–Arce, 44 F.3d 1420, 1423 (9th

Cir.1995). A petitioner must establish a factual basis for attributing knowledge to the government that the testimony or evidence at issue was false. See Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir.2004), as amended Oct. 21, 2004) (rejecting a due process claim where petitioner "sets out no factual basis for attributing any misconduct, any knowing presentation of perjury, by the government....").

Thus, in order to prevail on a federal due process claim for habeas relief, a petitioner must demonstrate that (1) the testimony or evidence was actually false; (2) the prosecution knew or should have known that the testimony or evidence was actually false; and (3) the false testimony or evidence was material. See Hayes, 399 F.3d at 984 (*quoting* United States v. Zuno–Arce, 339 F.3d 886, 889 (9th Cir.2003)) (setting forth the requirements for a petitioner to prevail under the Mooney–Napue line of cases.  In assessing "materiality" under Napue, a federal habeas court must determine whether there is "any reasonable likelihood that the false testimony [or evidence] could have affected the judgment of the jury," and if so, "the conviction must be set aside." Id. (*quoting* United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392 (1976)). Specifically, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. (noting that a federal habeas court conducting an analysis under Mooney–Napue need not also "conduct a separate harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993), because the required finding of materiality necessarily compels the conclusion that the error was not harmless."). See Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555 (1995).

In the instant case, petitioner is unable to satisfy the requirements of Mooney–Napue with respect to the purported manufacture by prison employees of the slungshot or the prosecution's failure to disclose the falsity of such evidence.  Apart from Petitioner's unsupported allegation, there is nothing in the trial record to affirmatively support a finding that either instrument was manufactured by prison employees rather than by Petitioner.  Petitioner argues that the slungshot evidence was first introduced at trial, and that the incident report contains no reference to logging into evidence a slungshot.  (Doc. 1, p. 30; Ex. 1).  Petitioner points to the incident report form which does not have "checked" the box for a slungshot as support for this contention.  (Id.)  On this basis, he reasons that

1  this evidence must not have existed at the time of the incident, i.e., that it was fabricated by prison

2  staff.  (Id.).

3          Such contentions, however, amount to nothing more than speculation.  Under the category

4  "inmate weapons," the incident report form contains a check mark by the designation "stabbing

5  instrument" and a star after the designation "club bludgeon."  There is no designation on the form for

6  "slungshot."  That the presence of the slungshot was indicated by a star next to "club bludgeon" rather

7  than a check mark, fails to demonstrate the evidence was manufactured.  Moreover, Petitioner has

8  failed to provide any other evidence corroborative of his false evidence claim apart from sheer

9  speculation and innuendo.  The state court concluded that such unsupported allegations failed to state a

10  prima facie claim for habeas relief for manufacturing evidence.  (LD 6, p. 2).  This ruling was

11  impliedly endorsed in the summary denials by the 5th DCA and the state supreme court.  Nothing now

12  before the Court would indicate that such a conclusion was objectively unreasonable.[3]

13          E.   Ineffective Assistance of Trial and Appellate Counsel (Grounds Six, Seven, and Eight)

14          Petitioner next contends that his trial counsel failed to provide effective assistance based on the

15  issues raised in grounds one through five (ground six) and grounds four and five (ground seven).

16  Petitioner also contends that appellate counsel failed to provide effective assistance for failing to raise

17  grounds one through five on appeal (ground eight).  These contentions are entirely without merit.

18          Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

19  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective

20  assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller v.

21  Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

22  Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been

23  actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard

24  does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel

25  is present but ineffective).

26          To prevail, Petitioner must show two things.  First, he must establish that appellate counsel's

27

28  [3] Petitioner's theory is premised upon the presentation of "manufactured" evidence, see Napue, 360 U.S. 264, 269–70, not
the suppression of exculpatory evidence by the prosecution.  See Brady v. Maryland, 373 U.S. 83, 87 (1963).

1    deficient performance fell below an objective standard of reasonableness under prevailing professional

2    norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner

3    must establish he suffered prejudice in that there was a reasonable probability that, but for counsel's

4    unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a

5    probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is

6    not what counsel could have done; rather, it is whether the choices made by counsel were reasonable.

7    Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

8            With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

9    unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v.

10   Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a

11   federal court believes the state court's determination under the Strickland standard "was incorrect but

12   whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan,

13   550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the

14   AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state

15   court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v.

16   Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state

17   court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

18   See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was

19   unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway

20   courts have in reaching outcomes in case-by-case determinations").

21           Here, the Superior Court identified the appropriate federal standard by applying Strickland.

22   (LD 8, p. 2).  Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's

23   representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application

24   of Strickland.  From the foregoing discussion, in which this Court concludes that grounds one through

25   five, upon which the instant ineffective assistance claims set forth in grounds six, seven, and eight, are

26   predicated, do not establish any constitutional error, it can only be concluded that neither trial nor

27   appellate counsel's performance fell below any standard of reasonableness.  Give that, there is no

28   possible prejudice that could result from non-existence failures in legal representation.  Accordingly,

1   all three of these grounds should be rejected.

2           F.   Cumulative Error (Ground Nine)

3           Finally, Petitioner argues that the cumulative effect of the alleged errors raised in his petition

4   require granting his petition.  Petitioner is mistaken.

5           The cumulative prejudicial effect of multiple trial errors must be considered in determining

6   whether habeas relief is warranted.  28 U.S.C. § 2254.  Phillips v. Woodford, 267 F.3d 966, 985 (9th

7   Cir. 2001).  Here, however, as discussed above, there are no constitutional errors to accumulate.  See

8   Villafurerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997)(per curiam).  In analyzing prejudice in a case

9   in which it is questionable whether any "single trial error examined in isolation is sufficiently

10  prejudicial to warrant reversal," the Ninth Circuit has recognized the important of considering the

11  "cumulative effect of multiple errors" and not simply conducting a "balkanized, issue-by-issue

12  harmless error review."  United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996); see also

13  Whelchel v. Washington, 232 F.3d 1197, 1124 (9th Cir. 2000)(noting that cumulative error applies on

14  habeas review); Matlock v. Rose, 731 F.2d 1236, 1244 (6th Cir. 1984)("Errors that might not be so

15  prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively

16  produce a trial setting that is fundamentally unfair.").  "Multiple errors, even if harmless individually,

17  may entitle a petitioner to habeas relief if their cumulative effect prejudiced the defendant."  Ceja v.

18  Stewart, 97 F. 3d 1246, 1254 (9th Cir. 1996), citing Mak v. Blodgett, 970 F.2d 614, 622 (9th Cir. 1992).

19  "Although no single alleged error may warrant habeas corpus relief, the cumulative effect of errors

20  may deprive a petitioner of the due process right to a fair trial."  Karis v. Calderon, 283 F.3d 1117,

21  1132 (9th Cir. 2002).

22          However, the Ninth Circuit has also recognized that where, as here, there is no single

23  constitutional error, nothing can accumulate to the level of a constitutional violation.  See Rup v.

24  Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).  Put simply, any number multiplied by zero is still zero.  As

25  can be easily seen from the analyses of Petitioner's claims supra, no error occurred; hence, there can

26  be no cumulative error.

27  ///

28  ///

**<u>RECOMMENDATION</u>**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **March 27, 2013**                                   **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE

24